IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

D. PERRY HOSTETLER and
DALE HOSTETLER                                                    PLAINTIFFS

v.                                        CIVIL ACTION NO.: 3:13-cv-351-DCB-MTP

WILLIAM DILLARD, ET AL.                                           DEFENDANTS

## ORDER

THIS MATTER is before the Court on Plaintiffs' Motion to Compel [151].  Having considered that parties' submissions, the Court finds that the Motion [151] should be granted in part and denied in part.

## BACKGROUND

This action arises from Plaintiffs' claims that Defendants breached certain farm lease contracts.  On September 25, 2014, Plaintiffs served attorneys John Garrard and Cham Trotter with subpoenas requesting the production of all documents related to the leasing of William Dillard's farmland. *See* Notice [139].  Garrard and Trotter provided legal services to the Dillard Defendants[1] in connection with the underlying farm lease contracts.  The parties agreed that Trotter should provide the Dillard Defendants with a copy of the Garrard and Trotter file.

On October 6, 2014, after reviewing the attorneys' file, the Dillard Defendants supplemented their response to Plaintiffs' request for production of documents by producing the attorneys' file, less and except privileged information described in their privilege log. *See* Supplemental Response [151-6].  The privilege log contains fifteen documents withheld on the

---

[1] The Dillard Defendants include William Dillard and William L. Dillard & Co., Inc.

1

basis of attorney-client privilege and/or the work product doctrine.  On October 30, 2014,

Plaintiffs filed their Motion [151] seeking to have this Court compel the Dillard Defendants to

produce all of the contents listed in their privilege log.

As an initial matter, while not raised by the Dillard Defendants, the Motion to Compel is

arguably untimely, as the discovery deadline was November 7, 2014, and the Motion was filed

on October 30, 2014. *See* L.U. Civ. R. 7(b)(2)(B) ("A party must file a discovery motion

sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the

court and time to effectuate the court's order before the discovery deadline.").  However, there is

good cause for considering the merits of the Motion.  This case was recently reassigned to Judge

Bramlette and the undersigned, which necessitated an extension of the trial date, and the Court is

currently considering other discovery disputes. *See* Motion [176].  Additionally, Plaintiffs have

presented evidence demonstrating that until recently they were unaware that the Dillard

Defendants were withholding information. *See* Declaration [167-1].  Accordingly, the Court will

extend the discovery deadline for the purpose of addressing the Plaintiffs' request.

## ANALYSIS

### *Attorney-Client Privilege*

Pursuant to Federal Rule of Evidence 501, state law determines the applicability of a

privilege in diversity actions such as the case *sub judice*.  Thus, Mississippi law governs the

attorney-client privilege issue.  Pursuant to the Mississippi Rules of Evidence, "[a] client has a

privilege to refuse to disclose and to prevent any other person from disclosing confidential

communications made for the purpose of facilitating the rendition of professional legal services

to the client . . . ." M.R.E. 502(b).

"'The attorney-client privilege is the oldest of the privileges for confidential

communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby to promote broader public interests in the observance of law and administration of justice.'" *Hewes v. Langston*, 853 So. 2d 1237, 1244 (Miss. 2003) (quoting *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)).  The Mississippi Supreme Court has interpreted the scope of the attorney-client privilege broadly.  The privilege protects "all information regarding the client received by the attorney in his professional capacity and in the course of his representation of the client." *Barnes v. State*, 460 So. 2d 126, 131 (Miss. 1984).

"The privilege does not require the communication to contain purely legal analysis or advice to be privileged.  Instead, if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).  The Dillard Defendants must establish that the subject communications are privileged. *See Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 494 (Miss. 2010) ("The burden of proof rests with the party asserting the attorney-client privilege.").

At the heart of this discovery dispute is a May 11, 2011, meeting between Dillard, his wife, Byron Seward, Garrard, and Trotter.  Garrard and Trotter were acting as attorneys for the Dillard Defendants.  They did not represent Seward, whom Dillard wished to conduct business with regarding Dillard's property.  During this meeting, the attendees discussed the Dillard Defendants' options for leasing, or otherwise utilizing, their property.

Plaintiffs argue that certain documents listed on the Dillard Defendants' privilege log are not protected by the attorney-client privilege because they relate to the May 11, 2011, meeting.

3

Although the Plaintiffs request an order from this Court compelling the Dillard Defendants to produce all of the contents of their privilege log, the Plaintiffs focus on five documents identified in the privilege log.

| | | |
|---|---|---|
| 6/21/13 | "Letter re filing of Hostetler lawsuit, need to obtain attorney and answer complaint" |
| 5/12/11 | "Letter re lease of William L. Dillard property in Humphreys County and potential lawsuit" |
| 5/12/11 | "Unexecuted copy of Farm Lease Contract between William L. Dillard and Byron Seward referenced in GT41" |
| 5/12/11 | "Unexecuted drafts of promissory notes from January 1, 2012 to November 1, 2014 re rents for 2012-14 land" |
| 5/12/11 | "Memo to file concerning meeting with Dillard, Hostetler, and Seward; attorneys mental impressions, and communications to Dillard concerning the same" |

According to Plaintiffs, because Seward had no attorney-client relationship with Garrard or Trotter, his presence at the May 11, 2011, meeting and his receipt of the May 12, 2011 and June 21, 2013, letters and unexecuted leases agreements destroy any claimed attorney-client privilege.  "To remain protected, a communication must have not been intentionally disclosed to third persons unless the disclosure was 'made in furtherance of the rendition of professional legal services to the client or disclosure was reasonably necessary for the transmission of the communication.'" *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 487 (N.D. Miss. 2006) (quoting Miss. R. Evid. 502(a)(5)).  As the Dillard Defendants have the burden of establishing the applicability of the attorney-client privilege, they must demonstrate that Seward's attendance at the meeting and receipt of the documents in question was done in furtherance of the rendition of professional legal services.

The Dillard Defendants point to Miss. R. Evid. 502(a)(2) and state that "an attorney's communication to a client and a third party does not automatically make the communication non-confidential for purposes of the privilege." Response Memorandum [164] at 4. The Dillard Defendants, however, have failed to present any proof or make any argument demonstrating that the disclosures made to Seward were made in furtherance of the rendition of professional legal services to the Dillard Defendants. Having failed to provide any proof or argument on this point, the Dillard Defendants have not met their burden of proving that the above-listed documents are privileged.

Moreover, even if the communications were protected by the attorney-client privilege, the privilege has been waived. A waiver may occur when a client reveals otherwise privileged communications to a third party. *See Jackson Medical Clinic for Women, P.A. v. Moore*, 836 So. 2d 767 (Miss. 2003). Additionally,"the general rule, which Mississippi appears to follow, is that a waiver of the privilege is deemed to encompass all information related to that topic." *Baptist Health v. Bancorpsouth Ins. Servcs., Inc.*, 270 F.R.D. 268, 273 (N.D. Miss. 2010) (citing *Bennett v. State*, 293 So. 2d 1, 4 (Miss. 1974)). "'The waiver doctrine entails the results not only of the claim for the particular document, but for any other document relating to the same subject matter.'" *Id*. at 274 (quoting Wight, Miller & Marcus, <u>Federal Practice and Procedure</u> § 2016.2 at 238 & n. 7 (1994)). The attorney-client privilege, if it existed, was waived when Seward and Mrs. Dillard discussed the content of the meeting and the content of the subject documents during their depositions, with no objection by counsel for the Dillard Defendants.

On September 17, 2014, the Plaintiffs deposed Seward, and he discussed the May 11, 2011, meeting. According to Seward, the topic of the meeting was the Dillard Defendants'

options for leasing or otherwise utilizing their property.  Seward testified that Trotter informed

Dillard that a lease agreement with Seward was not a viable option due to Dillard's contract with

the Plaintiffs.  Counsel for the Dillard Defendants did not object to this testimony. *See*

Deposition Excerpts [151-4] at 5-11.

On September 19, 2014, the Plaintiffs deposed Dillard's wife, Edith Dillard, who testified

individually and as a 30(b)(6) representative of Defendant William L Dillard & Co., Inc.

According to Mrs. Dillard, the attendees of the meeting discussed whether leasing or "custom

farming" were viable options. *See* Deposition Excerpts [151-5] at 3-7.[2]  Mrs. Dillard also

testified that, following the meeting, Garrard wrote Mr. Dillard a letter informing him that he

could be sued. *Id*. at 10-11.

On October 27, 2014, Plaintiffs again deposed Seward.  During the deposition, Seward

testified that he received a copy of the letter dated May 12, 2011.  According to Seward, the

letter informed Dillard that he could face a potential lawsuit because Dillard wanted to lease his

property to Seward. *See* Deposition Excerpts [151-8] at 8-10.  Seward also testified that he

received a copy of a letter from Garrard dated June 21, 2013, informing Seward and the Dillard

Defendants about this lawsuit and recommending that they obtain counsel and answer the

complaint. *Id*. at 6-8.

Additionally, Seward testified that he received a copy of unexecuted farm lease contract

between Dillard and Seward and a copy of the unexecuted promissory note. *Id*. at 11-13.

According to Seward, the lease and note covered the years of 2012 through 2014 and would

---

[2] Counsel for the Dillard Defendants initially objected when Plaintiffs' counsel asked Mrs. Dillard about the May 11, 2011, meeting.  However, after Mrs. Dillard informed counsel that Seward attended the meeting, counsel allowed that line of questioning. *See* [151-5] at 3.

allow Dillard to lease 3500 acres to Seward for $200 per acre. *Id.* at 13-15.

The Dillard Defendants argue that the attorney-client privilege was not waived as to the subject communications because the deposition testimony of Seward and Mrs. Dillard simply reflected basic descriptive information that equates to the descriptions required to be disclosed in a privilege log.  This argument lacks merit.  As previously discussed, Seward and Mrs. Dillard testified regarding the substance and content of the May 11, 2011, meeting and the subject documents.

The Dillard Defendants also cite to the Case Management Order [21] entered in this case and argue that the attorney-client privilege was not waived as to the subject communications.  In pertinent part, the Order [21] states:

> Pursuant to Rule 502(d) of the Federal Rules of Evidence,[3] the attorney-client privilege and the work-product protections are not waived by any disclosure connected within this litigation pending before this Court.  Further, the disclosures are not waived in any other federal or state proceeding.

Plaintiffs argue that the Court's Order [21] and Fed. R. Evid. 502(d) are not applicable to the *intentional* disclosures at issue.  The Court agrees.  Although Fed. R. Evid. 502(d) is not expressly limited to unintentional disclosures, the purpose and intent of Rule 502 is to protect litigants from inadvertent disclosures.  Congress added Rule 502(d) for "two major purposes: (1) resolving some longstanding disputes about the effect of certain disclosures of privileged information–specifically disputes involving inadvertent disclosure and subject matter waiver, and (2) responding to the widespread complaint that litigation costs necessary to protect against

---

[3] Fed. R. Evid. 502(d) states that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court . . . ."

waiver of privilege have become prohibitive due to the concern that any disclosure will operate as a subject matter waiver of all protected communication." *Olaoye v. Wells Fargo Bank NA*, 2013 WL 6912691, at *1 (N.D. Tex. Dec. 30, 2013) (internal quotations and citations omitted).[4] Accordingly, neither Rule 502(d) nor this Court's Order [21] prevented the Dillard Defendants' waiver of the attorney-client privilege.

***Work Product Doctrine***

The Dillard Defendants also contend that certain documents at issue are protected by the work product doctrine.[5]  The work product doctrine is governed by Federal Rule of Civil Procedure 26(b)(3).  "The work product doctrine does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Liberty Mutual Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 764 (N.D. Miss. 2009).

The voluntary disclosure of work product to a third person is insufficient in itself to waive the protection of the work product doctrine. *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).  However, "the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the

---

[4] The Court recognizes that there are certain instances where a purposeful disclosure of privileged information may fall within the ambit of Rule 502(d), but this case does not involve such an instance. *See Whitaker Chalk Swindle & Sawyer, LLP v. Dart Oil Corp.*, 2009 WL 464989 (N.D. Tex. Feb. 23, 2009) (holding that a purposeful disclosure made pursuant to the mandatory directive of Fed. R. Civ. P. 26(a) may fall within the ambit of Fed. R. Evid. 502).

[5] The Dillard Defendants assert that, of the documents previously listed, the following are protected by the work product doctrine: (1) the May 12, 2011, memorandum concerning the May 11th meeting, (2) the May 12, 2011, letter concerning the May 11th meeting, and (3) the June 21 2013, letter concerning this lawsuit.

court voluntarily or makes no objection when it is offered." *Id* (citing *Fox v. Taylor Diving &*
*Salvage Co.*, 694 F.2d 1349, 1356 (5th Cir. 1983) (finding a waiver of the work product when no
objection was made to introduction of privileged material by a party's own witness).

The disclosure of certain work product may waive the work product protection for other
documents of the same character.  Under Fed. R. Evid. 502, waiver of work product protection
extends to other undisclosed communications if the waiver was intentional, the disclosed and
undisclosed communications involve the same subject matter, and they ought to in fairness be
considered together.

The disclosures made by Seward and Mrs. Dillard during their depositions waived the
work product protection for the subject documents.  Accordingly, the Court finds that the
following documents are discoverable:

| | |
|---|---|
| 6/21/13 | "Letter re filing of Hostetler lawsuit, need to obtain attorney and answer complaint" |
| 5/12/11 | "Letter re lease of William L. Dillard property in Humphreys County and potential lawsuit" |
| 5/12/11 | "Unexecuted copy of Farm Lease Contract between William L. Dillard and Byron Seward referenced in GT41" |
| 5/12/11 | "Unexecuted drafts of promissory notes from January 1, 2012 to November 1, 2014 re rents for 2012-14 land" |
| 5/12/11 | "Memo to file concerning meeting with Dillard, Hostetler, and Seward; attorneys mental impressions, and communications to Dillard concerning the same" |

The Dillard Defendants are not required to produce the remaining documents listed in their
privilege log.  While the Dillard Defendants have the burden of establishing the applicability of
the attorney-client privilege and the work product doctrine, the Plaintiffs must present an

9

argument that the remaining documents should be produced.  The Plaintiffs failed to make any specific argument as to the other documents.

IT IS, THEREFORE, ORDERED that:

1.    Plaintiffs' Motion to Compel [151] is GRANTED in part and DENIED in part.

2.    On or before December 8, 2014, the Dillard Defendants shall produce the documents, as set forth herein.

SO ORDERED this the 3rd day of December, 2014.

s/ Michael T. Parker
United States Magistrate Judge